UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-102-MOC

| | | |
|---|---|---|
| GARY DIONNE, STEVEN CHAMBERS, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| HEADWATERS AT BANNER ELK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a verified motion to dismiss filed by P. Wayne Sigmon, the Chapter 7 Trustee (the "Trustee" or "Appellee") for Headwaters at Banner Elk, LLC (the "Debtor"), pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure. The Trustee seeks an order from this Court dismissing the appeal filed by Steve Chambers and Gary Dionne (collectively, the "Appellants"). (Doc. No. 3). Also pending are the following motions: Motion to Intervene by The Headwaters Property Owners Association, Inc., (Doc. No. 7); Amended Motion to Intervene by The Headwaters Property Owners Association, Inc., (Doc. No. 11); and Motion for Extension of Time for Briefs of Appellee and Intervening Appellee, (Doc. No. 20). For the following reasons, the Court finds that Appellants lack standing to file this appeal, and the appeal is therefore dismissed. Furthermore, the remaining motions will be denied as rendered moot by this dismissal.[1]

---

[1] The proposed intervenor, The Headwaters Property Owners Association, Inc. ("POA"), explains in its motion to intervene that it "has a significant interest in participating in this Court's determination of Appellants' standing to appeal (and possible dismissal of the appeal) and in protecting the POA's exclusive exercise of tis rights under the Declaration." (Doc. No. 8 at 6). The POA further explains that Appellants "are seeking in this appeal to usurp and unilaterally override the POA's discretionary decision to accept and not appeal the Stay Relief Order denying

1

## I. BACKGROUND

### A. Procedural Posture of the Bankruptcy Case

The Debtor Headwaters at Banner Elk, LLC is a North Carolina limited liability company formed in 2005 to acquire, operate, and develop certain real property in Avery County, North Carolina. The development is a planned community known as "The Headwaters at Banner Elk." On June 9, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The bankruptcy court converted the case to a case under chapter 7 and appointed P. Wayne Sigmon as Chapter 7 Trustee on February 15, 2017. Mr. Sigmon is the Chapter 7 trustee for the Debtor's bankruptcy estate.

### B. Background Facts Regarding the Debtor and the Headwaters at Banner Elk

The Headwaters at Banner Elk is a planned community subject to the North Carolina Planned Community Act, Chapter 47F of the North Carolina General Statutes. The community is governed by, among other things, the terms of an Amended and Restated Declaration of Covenants and Restrictions of The Headwaters Property Owners Association, Inc., (the "Declaration"). The Headwaters Property Owners Association, Inc. ("POA") is a non-profit corporation that administers and manages the Headwaters community.

Under the Declarations, all property owners in the Headwaters development are members of the POA by virtue of owning lots in the development. The POA is also governed by the POA Bylaws, which require the POA to hold annual membership meetings. The Bylaws further provide that POA members shall elect a board of directors (the "Board") to conduct the affairs of

---

the POA Protective Motion, it is necessary for the POA to intervene in order to try to effectuate the POA's rightful decision not to appeal." (Id. at 5). Thus, because the POA is attempting to intervene to argue that Appellants lack standing, the motion to intervene is rendered moot by this Court's Order.

the POA at their annual meetings. As of the Petition Date, the Debtor was the largest stakeholder in the POA, owning approximately 36 of the 158 lots and condominium units in the development.

**C. The Dispute Between the Debtor and the POA**

Before the Petition Date, a dispute arose between the POA and the Debtor over the Debtor's alleged failure to pay association dues. The Debtor denied that it owed any such prepetition dues to the POA because it prepaid POA dues and that it was also entitled to offset against its future dues obligations based on loans and advances it previously made to the POA. The POA filed three civil actions in Avery County Superior Court related to, among other things, the dispute over unpaid dues and the encumbrance of certain real property owned by the Debtor (the "Civil Actions"). The Civil Actions were stayed when the Debtor filed its chapter 11 case, and they were subsequently dismissed. The POA filed a proof of claim, asserting a claim in excess of $1,000,000 against the Debtor's bankruptcy estate.

**D. The Bankruptcy Court's 2016 Election Order**

In response to the Debtor's bankruptcy filing, on June 18, 2015, and June 23, 2015, the POA informed all lot owners that its 2015 annual meeting and mandatory Board election were cancelled. The Board then in existence refused to schedule the election or meeting despite petitions from other homeowners to conduct the meeting. On August 28, 2015, the Debtor filed a motion to compel an annual meeting of the POA and a Board election (the "Election Motion"). The POA responded by, among other things, arguing that the POA should not have to conduct the mandatory election unless it could suspend the estate's voting rights based on its unpaid post-petition dues. The bankruptcy court granted the Election Motion and overruled all objections asserted by the POA in its Order Compelling Annual Meeting, Board of Directors Election, and

3

Granting Related Relief on January 13, 2016, (the "Election Order"). (Doc. No. 3-1, Election Order, Ex. 1). In pertinent part, in the Election Order, the bankruptcy court held that:

> The automatic stay of 11 U.S.C. § 362(a) prevents the Headwaters POA from attempting to prohibit the Debtor from exercising its voting rights [and that] [g]ranting the relief requested in the Election Motion is both necessary and appropriate to: (i) protect the estate's voting rights and rights of participation in the Headwaters POA, and (ii) enforce the automatic stay set forth in 11 U.S.C. § 362(a).

(Id. at 7, ¶ 40). The bankruptcy court held that the estate's property rights include: "(i) the right to membership in the POA; (ii) the right to vote its lots in meetings of the POA; (iii) the right to elect Board members to govern the POA; [and] (iv) the right to a properly constituted Board to govern the POA…." (Id. at 8, ¶ 42). The bankruptcy court also found that "[u]nder section 541 of the Bankruptcy Code, these rights are property of the bankruptcy estate." (Id. at 8, ¶ 43). Importantly, the bankruptcy court held that "section 362(a)(3) would act to stay any attempt by the Board to strip the Debtor of voting rights for its alleged failure to pay post-petition dues where, as here, the parties have a long running dispute regarding the amount of any dues owed by the Debtor to the Headwaters POA." (Id. at 8, ¶ 44). The POA did not appeal the Election Order, nor did it seek relief from the Election Order under Rule 60 of the Federal Rules of Civil Procedure.

**E. No POA Elections Are Held in 2016-2018 and the Trustee's 2018 Adversary Proceeding**

Following entry of the Election Order, the POA conducted its 2015 election in February 2016 by a mail-in paper ballot. The Debtor and other homeowners objected to the way this election was conducted on various grounds, including that is did not comply with the Bylaws or the Election Order. The Board that was allegedly elected in the 2015 election was never seated. Since the Spring of 2016, the Board has been controlled by POA members Robert Heffron,

David Raines, Janet Hanson and Keith Olin (the "Prior Board").

Notwithstanding the bankruptcy court's Election Order, the POA did not conduct annual meetings or board elections in 2016, 2017, or 2018. As a result of the failure to conduct elections, among other things, on October 31, 2018, the Trustee and other members of the POA filed an adversary proceeding against the POA, the Appellants, and the Prior Board (the "Adversary Proceeding"). Among other things, the Trustee seeks damages from the defendants based on their alleged tortious interference with the bankruptcy estate's prospective economic advantage and violations of the automatic stay. These claims are based on, among other things, the defendants' involvement in interfering with a sale of the bankruptcy estate's real property to a third-party purchaser for more than $1,000,000.00. The Appellants filed an answer in the Adversary Proceeding and deny liability.

**F. The 2019 POA Election and Related Stay Relief Litigation**

Contemporaneously with initiating the Adversary Proceeding, the Trustee also filed a motion seeking to compel an annual POA meeting and Board election. On December 14, 2018, at a hearing on this second motion to compel, the POA informed the bankruptcy court that it had scheduled an annual meeting and Board election on February 16, 2019 (the "February 16 Election"). The bankruptcy court denied the Trustee's motion to compel on the basis of the POA's representations that an election was scheduled.

Shortly thereafter, on January 4, 2019, the POA filed a Protective Motion Regarding Voting Rights; or in the Alternative Motion for Relief from Automatic Stay with Application of 362(e) (the "Stay Relief Motion"). The Stay Relief Motion stated that the POA intended to suspend the estate's voting rights in the upcoming February 16 Election and sought an order from the bankruptcy court: (a) finding that the automatic stay imposed by 11 U.S.C. § 362 did

5

not apply to the suspension proceeding, or (b) granting relief from the automatic stay to suspend the estate's voting rights.

The Appellants, along with the other Prior Board members, filed a "joinder" in the Stay Relief Motion where they referred to themselves as the "Individual Defendants." Without waiting for either a hearing or ruling on the Stay Relief Motion, the POA conducted a suspension hearing on January 18, 2019, and purportedly caused the POA to suspend the bankruptcy estate's voting rights in the February 16 Election pursuant to the applicable provisions of the Declaration authorizing such action by the POA. The POA conducted a board election on February 16, 2019, at which the Trustee cast 36 votes (one vote for each lot owned by the estate). The POA board elected at the February 16 Election consisted of POA members John Currier, Gail McQuilkin, Chuck Rubin, Laura Bell and Tom Eggers.

After the February 16 Election was conducted, the bankruptcy court held a hearing on the Stay Relief Motion on February 20, 2019. The bankruptcy court denied the Stay Relief Motion by entry of an Order dated March 19, 2019 (the "Stay Relief Order"). (Doc. No. 3-2, Ex. 2: Stay Relief Order). In pertinent part, the Stay Relief Order again held that the bankruptcy estate's voting rights are property of the bankruptcy estate under 11 U.S.C. § 541. (Id. at p. 6, ¶ 8). Accordingly, the bankruptcy court held that the POA's January 18 suspension of the estate's voting rights was "void because: (i) such action was taken in disregard of this Court's Order Compelling Election and (ii) such action was a violation of the automatic stay." (Id. at 7, ¶ 2). The Stay Relief Order awarded no pecuniary relief to or against the Appellants, nor did it order any relief against them at all. Instead, it merely voided the vote suspension action taken by the POA in violation of the stay and denied the POA's Stay Relief Motion.

**G. The Appeal of the Stay Relief Order**

6

The POA (i.e., the asserted creditor of the bankruptcy estate that filed the Stay Relief Motion) did not appeal from the Stay Relief Order. Rather, the Appellants, who are individual homeowners with no authority to act for the POA, filed a notice of appeal of the Stay Relief Order on April 1, 2019. None of the Prior Board members filed a notice of appeal or joined in the appeal, and the deadline to file an appeal has expired. The appeal was docketed with this Court on April 2, 2019.

**H. The Appellants' Relationship to the Bankruptcy Case**

The two Appellants own 3 of the 158 voting lots and condominium units in the Headwaters community. Neither Appellant is the trustee, the debtor, or an equity security holder of the Debtor. Nor are they creditors of the bankruptcy estate, as neither filed a proof of claim in the Debtor's base case, and the bar date to file proofs of claim has expired. Rather, the Appellants' only relationship to the Debtor's bankruptcy case is as defendants in the Adversary Proceeding.

**II. DISCUSSION**

Appellee argues that the individual homeowners Chambers and Dionne lack standing to appeal the bankruptcy court's Stay Relief Order. The Court agrees. Only a party with standing may appeal a bankruptcy court order. White v. Univision of Va. Inc. (In re Urban Broad. Corp.), 401 F.3d 236, 243 (4th Cir. 2005) (discussing standing requirements). To facilitate the unique goals of bankruptcy proceedings, standing in bankruptcy court is more limited than general Article III standing. See Richman v. First Woman's Bank (In re Richman), 104 F.3d 654, 657 (4th Cir. 1997) (noting that the goals of bankruptcy are achieved by "narrowly defining who has standing in a bankruptcy proceeding."); Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001) (illustrating that appellate jurisdiction over bankruptcy appeals is more limited that Article

III standing).

Standing to appeal an order of the bankruptcy court is limited to "a person aggrieved by the bankruptcy order." In re Urban Broad. Corp., 401 F.3d at 243 (citing U.S. Trustee v. Clark (In re Clark), 927 F.2d 793, 795 (4th Cir. 1991)). Only a party "directly and adversely affected pecuniarily" by the entry of an order is a "person aggrieved" by that order. Id. (quotations omitted). To demonstrate such a direct and adverse pecuniary affect, an "appellant 'must show that the order. . .'diminishes [its] property, increases [its] burdens[,] or impairs [its] rights.'" Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC, 578 B.R. 325, 354 (E.D. Va. 2017) (quoting Certain Underwriters at Lloyds v. Future Asbestos Claim Representative (In re Kaiser Aluminum Corp.), 327 B.R. 554, 558 (D. Del. 2005)) (alterations in original).

A person has no standing to appeal an order when the relief sought would result in "no pecuniary benefit at all" to that party. Id. at 355. Thus, an appellant claiming a sufficient pecuniary interest to appeal an order "must show that the bankruptcy court's order directly and adversely affected his pecuniary interests." Parson v. Matson, No. 3:17-cv-827-JAG, 2018 WL 1855964, at *2 (E.D. Va. Apr. 18, 2018). As the Seventh Circuit Court of Appeals observed, "[p]ecuniary interest is a necessary rather than a sufficient condition . . . ." of establishing standing. In re C.P. Hall Co. v. Columbia Cas. Co., 750 F.3d 659, 663 (7th Cir. 2014). This is so because an appellant who "is not a creditor of [the Debtor's] estate in bankruptcy, is not the debtor, and, unlike the U.S. Trustee, is not a guardian of conduct in bankruptcy proceedings . . . ." does not have standing to appear merely because it "may suffer collateral damage from a ruling in a bankruptcy proceeding . . . ." Id. at 661.

Here, individual homeowners Chambers and Dionne lack standing to appeal the Stay

8

Relief Order because they have no pecuniary interests that are directly impacted by the Stay Relief Order. The Appellants are not the Debtor, the trustee, or creditors in the Debtor's bankruptcy case, and are not holders of equity interests in the Debtor. Put simply, the Appellants lack standing to appear in the base case or appeal the bankruptcy court's orders because they lack a direct pecuniary interest in the distribution of assets to creditors. See Grausz v. Englander, 321 F.3d 467, 473 (4th Cir. 2003) ("In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors.").

More specifically, the Appellants have not shown that the Stay Relief Order directly impacted their pecuniary interests. The Stay Relief Order resolved the POA's dispute with the Trustee regarding the purported suspension of the bankruptcy estate's voting rights. The Declaration and N.C. GEN. STAT. § 47F-3-102(11) grant such suspension authority to the POA, not to any individual property owners. Appellants, as mere individual homeowners, had no direct pecuniary interest in a dispute between the Trustee and the POA over the estate's voting rights and the application of the automatic stay raised by the POA's Stay Relief Motion and resolved by the Stay Relief Order. Nor did the Stay Relief Order directly impact the Appellants' pecuniary interests because no money was awarded to or against them. The Stay Relief Order merely determined that the POA did not validly suspend the bankruptcy estate's voting rights as a property owner. Moreover, Appellants' status as defendants in the Adversary Proceeding does not create standing for them here because "standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in an adversary proceeding." Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 743 (3d Cir. 1995). Such parties are not "aggrieved" and, therefore, lack standing to be heard on the matter. Id.; see also United States Fire Ins. Co. v. Weishorn, No. 3:08cv226, 2009 WL 3300040, at *4

(W.D.N.C. Oct. 14, 2009) (endorsing the Travelers Ins. Co. case and holding that "waging a defense in a wholly separate litigation does not confer standing" on a party in a bankruptcy case to contest stay relief).

In their brief in opposition, Appellants contend they have standing to appeal the Stay Relief Order for several reasons. First, the Appellants argue that the Stay Relief Order purportedly prohibited them from enforcing restrictive covenants. To support that proposition, the Appellants provide a generalized discussion of North Carolina law addressing restrictive covenants.[2] Contrary to Appellants' arguments, however, North Carolina law does not govern this Court's standing analysis because "[s]tanding…in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).

The Appellants also argue that "[i]n holding that Appellee is not required to comply with the Declarations and pay the $459,050.40 in unpaid, post-petition assessments" that the bankruptcy estate supposedly owes to the POA, the Appellants have been harmed because they

---

[2] While state law gives members of a planned community standing to pursue an action to enforce restrictive covenants in certain instances, it does not recognize that individual members of the community have standing to pursue matters that belong to the community association. See Raintree Corp. v. Rowe, 38 N.C. App. 664, 668 (1978). Where the bylaws of a homeowner's association "provide that annual assessments for maintenance are to be paid to it[,]" the association is the "proper party to bring [an] action to collect maintenance assessments." See id. This is also recognized by North Carolina's Planned Community Act, which gives an association the power to "[i]mpose reasonable charges for late payment of assessments...[and]…suspend privileges or services provided by the association . . . ." N.C. GEN. STAT. § 47F-3-102(11) (2017).
    Contrary to the Appellants' contentions, North Carolina law provides no indication that individual homeowners would have the "right to sue inter se to enforce restrictive covenants . . . for the payment of monthly assessments." None of the cases cited by the Appellants as allegedly supporting this proposition involved an attempt by an individual property owner to compel another individual property owner to pay assessments to an association. Nor do they stand for the proposition that one individual property owner in an association can suspend the voting rights of another property owner in that association.

10

speculate that their dues will be increased and the value of their real estate is now worth less. See (Doc. No. 16 at 14). Appellants argue that the Stay Relief Order diminishes Appellants' properties in the subdivision because, in failing to require Appellee to pay post-petition dues, and thereby "burdening each lot with higher assessments in order to offset the deficit," the resale value of Appellants' lots have dropped significantly. See (Id. at 15).

Appellants' standing argument based on the possibility of reduced value of their lots is without merit. First, the Stay Relief Order did not even address whether the POA has an allowed claim against the bankruptcy estate for purportedly unpaid assessments in any amount. The allowance, priority, or extent of any such claim asserted by the POA and any distributions to be made on any claim would have to be addressed in the claims reconciliation process and paid pursuant to the provisions of the bankruptcy code. See, e.g., 11 U.S.C. § 501 (discussing filing claims), § 502 (discussing the claims allowance process), § 507 (addressing priority of claims), & § 726 (discussing distribution of estate property to creditors). Rather, the bankruptcy court merely voided the vote suspension action taken by the POA in violation of the stay and denied the POA's Stay Relief Motion. In pertinent part, the Stay Relief Order held that the bankruptcy estate's voting rights are property of the bankruptcy estate under 11 U.S.C. § 541. (Doc. No. 3-1, Ex. 1 at p. 6, ¶ 8). Accordingly, the bankruptcy court held that the POA's January 18, 2019, suspension of the estate's voting rights was "void because: (i) such action was taken in disregard of this Court's Order Compelling Election and (ii) such action was a violation of the automatic stay." (Id. at p. 7, ¶ 2).

Second, the Appellants' purported harm is both indirect and highly speculative. Even if the Stay Relief Order had resolved such claims of the POA, any such impact on the Appellants would be indirect. The Stay Relief Order did not adjudicate the amount of dues owed to the

POA, nor did it adjudicate the value of Appellants' property or any alleged diminution in the value of such property. Thus, overturning the Stay Relief Order would not result in any pecuniary relief to the Appellants because it would neither award the Appellants with dues they contend they have had to pay, nor award any monetary relief to purportedly compensate them for the alleged diminution in value of their property. Put simply, the speculative harms Appellants complain of are indirect at most.

In sum, the Appellants have presented no law suggesting that the individual Appellants have standing to exercise the POA's discretionary remedy of suspending the bankruptcy estate's voting rights for the purported failure to pay assessments.[3] As discussed above, the Stay Relief Order did not adjudicate the issue of the assessments at all—it merely determined that the Debtor's rights to vote in POA elections were property interests belonging to the bankruptcy estate protected by the automatic stay. For these reasons, individual homeowners Dionne and Chambers lack standing to appeal the Stay Relief Order. This appeal is therefore dismissed.[4]

---

[3] The Appellants argue that "[p]ursuant to the Declarations, if a property owner in the subdivision fails to pay the assessments, the property owner's voting rights will be suspended." (Doc. No. 16 at 13). The Declarations, however, merely reserve "the right of the Association" to suspend a lot owner's "voting rights and rights to use of the recreational facilities . . . for any period during with any assessment against that Owner's Lot remains unpaid . . ." (Doc. No. 19-2, Ex. 2, Article 10, Section 10.1(a)). The POA Bylaws clarify the process for such suspensions, providing that the "Board may prohibit any owner from voting . . . if such owner is shown on the books or management accounts of the Association to be more than sixty (60) days delinquent in any payment due the Association." (Doc. No. 19-3, Ex. 3 Section 1.4). Moreover, the Bylaws provide that such suspensions may only occur "after notice and an opportunity to be heard and present evidence . . . ." (Id., Ex. 3, Section 4.14(l)). Thus, rather than creating a covenant regarding voting rights, the Declarations and Bylaws merely create a potential remedy for the POA to potentially enforce the applicable covenants. See Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred (In re Gordon Props., LLC), 460 B.R. 681, 693 n.5 (Bankr. E.D. Va. 2011) (noting that suspension of voting rights "is only one remedy an association [has] to collect delinquent condominium fees.").

[4] Appellees argue that the Appellants also lack Article III standing because they cannot legally seek to enforce the rights of the POA. Because Appellants fail to satisfy the more limited standing requirement under the bankruptcy code, the Court does not address Article III standing.

## IV. CONCLUSION

For the reasons stated herein, the Trustee/Appellee's motion to dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Trustee/Appellee's Verified Motion to Dismiss, (Doc. No. 3), is **GRANTED**.

2. This appeal is dismissed.

3. The Motion to Intervene by The Headwaters Property Owners Association, Inc., (Doc. No. 7); Amended Motion to Intervene by The Headwaters Property Owners Association, Inc., (Doc. No. 11); Motion for Extension of Time for Briefs of Appellee and Intervening Appellee, (Doc. No. 20), are all **DENIED** as moot.

4. The Clerk is directed to terminate this action.

Signed: June 11, 2019

Max O. Cogburn Jr.
United States District Judge